**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRESH PREPARED FOODS, INC., d/b/a BLUE RIDGE FARMS,<br><br>        Plaintiff,<br><br>        v.<br><br>FARM RIDGE FOODS LLC, et al.,<br><br>        Defendants. | CIVIL ACTION NO. 10-6310 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

The plaintiff, Fresh Prepared Foods, Inc. ("Fresh Prepared
Foods"), d/b/a Blue Ridge Farms, brought this action alleging,
<u>inter alia</u>, trademark infringement by defendants, Farm Ridge Foods
LLC ("Farm Ridge Foods"), Jeffrey Siegel, Ronald Loeb, and Luis
Gonzalez (collectively, "the Defendants"). (See dkt. entry no. 6,
Am. Compl.)  The parties cross-move for summary judgment on the
issues of liability and trademark infringement.  (See dkt. entry
no. 44, Pl. Mot. for Summ. J. ("Pl. Mot."); dkt. entry no. 50,
Defs. Mot. for Summ. J. ("Defs. Mot.").)  Fresh Prepared Foods
moves for summary judgment in its favor as to liability on Counts
1-6 of the Amended Complaint, the Defendants' counterclaims,
attorneys' fees and costs, and an injunction prohibiting the
Defendants from use of the specified logo, name, and references on

their website.  (See Pl. Mot.)[1]  Counts 1-6 of the Amended
Complaint concern trademark infringement, false designation of
origin, unfair competition, and dilution of trademarks under the
Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), 1125(c); unfair
competition under New Jersey state law; and common law trademark
infringement and unfair competition.  (See Am. Compl. at ¶¶ 17-38.)
The Defendants seek a declaration that Fresh Prepared Foods has no
right to the registered trade name or registered logo, summary
judgment in their favor as to all claims, and an award of
attorneys' fees and costs.  (See Defs. Mot.)

        For the reasons that follow, the Court will deny the
Defendants' cross motion for summary judgment, and grant the motion
by Fresh Prepared Foods for summary judgment in part and deny it in
part.

_____

        [1] The trademark for the trade name "Blue Ridge Farms" (the
"registered trade name") was registered with the United States
Patent and Trademark Office ("USPTO") by Chloe Foods Corp., ("Chloe
Foods") on December 12, 2006, at USPTO Registration Number
3,182,917.  (See infra at I.i.)  The specified logo incorporating
that trade name (the "registered logo") was registered with the
USPTO by Chloe Foods on December 12, 2006, at USPTO Registration
Number 3,182,936.  (See id.)

I.    **Background**[2]

The members of the Siegel family began selling chicken parts
in 1938, and incorporated their store in New York as Blue Ridge
Farms, Inc., in 1961.  (See dkt. entry no. 48, Defs. Statement of
Undisputed Facts at ¶¶ 1, 2 ("Defs. Statement").)

Blue Ridge Farms, Inc., and its owners entered into an
agreement to sell the company to Thomas Kontogiannis in 2004.  (See
dkt. entry no. 8, Ans. & Countercl. at ¶ 48.)  Kontogiannis turned
out to be a "career criminal" engaged in various criminal
enterprises, including but not limited to immigration fraud, bid
rigging, and bribing former United States Representative Randall
"Duke" Cunningham.  (Id. at ¶¶ 50-53.)  The Defendants assert that
Kontogiannis and his daughter wrongfully usurped control over Blue
Ridge Farms, Inc.'s day-to-day operations, using entities under
their exclusive control (including 3301 Atlantic Avenue LLC, BRF
Acquisition LLC, and Chloe Foods), and divested Blue Ridge Farms,
Inc.'s assets, including its intellectual property, by fraudulently
transferring these assets to other controlled entities.  (See id.
at ¶ 55-56.)  The members of the Siegel family commenced a long

---

[2] These facts are largely drawn from the statements submitted
by the parties with their papers.  Unless otherwise noted, the
facts presented are undisputed.  See L.Civ.R. 56.1(a) ("any
material fact not disputed shall be deemed undisputed for purposes
of the summary judgment motion"); Smith v. Addy, 343 Fed.Appx. 806,
808 (3d Cir. 2009).  We thus, after ensuring that the parties'
respective statements of fact accurately summarize the evidence of
record, provide citation to those statements.

3

saga of multi-forum litigation seeking the return of their
trademark property, while all along asserting that they were the
rightful owners and that Kontogiannis and the subsequent companies
could not purport to have any legal interest or title to that
property.  (See id. at ¶¶ 61-63, 64, 73.)[3]

    **i.   The Bankruptcy Proceedings**

The issue of ownership of that trademark property was raised
during the Chloe Foods bankruptcy proceedings: In re Chloe Foods
Corp., No. 08-48650 (Bankr. E.D.N.Y., Chap. 11 petition filed Dec.
19, 2008).  (See dkt. entry no. 44-1, Pl. Statement of Facts at ¶¶
4-16 ("Pl. Statement").)  In those bankruptcy proceedings, Chloe
Foods moved to sell certain assets, and proposed a sale of certain
intellectual properties to EM-ESS Acquisition LLC ("EM-ESS").  (See
id. at ¶ 4.)  Jeffrey Siegel, Blue Ridge Farms, Inc., June Siegel,
and the estate of Seymour Siegel ("the Objectors") objected to the
asset sale motion, arguing that Chloe Foods did not own the
intellectual property it proposed to sell.  (See id. at ¶¶ 5-14;

---

[3] See also Rothberg v. Chloe Foods Corp., No. 06-5712, 2007
WL 2128376, at *1-*8 (E.D.N.Y. July 25, 2007) (providing a
detailed history of the transactions between the Kontogiannis
and Siegel families); Blue Ridge Farms, Inc. v. Kontogiannis, 26
Misc.3d 1206 (N.Y. Sup.Ct. 2009), aff'd, 83 A.D.3d 982 (N.Y.
App.Div. 2d Dep't 2011).

see dkt. entry no. 44-4, Declaration of Donna Thompson ("Thompson Decl."), Ex. A, In re Chloe Foods Corp.)[4]

Chloe Foods sought the Bankruptcy Court's approval of a proposed sale of assets, which specifically referenced trademarks:

**THE PROPOSED SALE**

**(A) THE SALE OF ASSETS**

7.     EM-ESS Acquisition LLC has contracted to purchase the Debtor's assets (the "Property"), consisting of its trade marks and trade names, customer list, recipes, goodwill, accounts receivable, machinery and equipment, office furniture and equipment and its leases (a)

(Dkt. entry no. 44-4, Thompson Decl., Ex. B, In re Chloe Foods Corp., Mot. for Approval of Proposed Sale of Assets at ¶ 7.) Enumerated in Section 2.2 of the proposed purchase agreement, the assets to be purchased included:

(g)     all of Seller's recipes, formulas, know-how, trade secrets, customer lists, books of account, written contracts with customers, trademarks, trade names, service marks, and service names and all rights associated therewith and appurtenant thereto, all as set forth on Schedule 2.2(g) attached hereto and made a part hereof (collectively "Intellectual Property");

(Dkt. entry no. 44-4, Thompson Decl., Ex. C, Asset Purchase Agreement at 7.)  As was noted by the Defendants, this agreement

---

[4] Blue Ridge Farms, Inc., an intervenor defendant in this action, is the company owned and operated by the Siegel family for many years.  (See dkt. entry no. 13, Notice of Mot. to Intervene as Def.; dkt. entry no. 14, Aff. of Ahmed A. Massoud in Supp. of Mot. to Intervene at ¶¶ 6, 7.)  The company is separate from the legal identity of the trade name "Blue Ridge Farms", which is a distinct piece of intellectual property.  As used herein, "Blue Ridge Farms, Inc." refers to the Siegel family company.

5

did not include the schedule enumerating all of the specific
"trademarks" and "trade names" that were being sold; that schedule,
Schedule 2.2 G, was instead to be provided at closing.  (See id. at
30.)  Schedule 2.2 G, concerning the intellectual property of the
debtor, was provided at closing.  (See dkt. entry no. 56-5, Supp.
Decl. of Donna L. Thompson ("Thompson Supp. Decl."), Ex. E,
Schedule 2.2 G (listing recipes only, despite label designating it
to be "Recipes, Customer Lists, Trademarks, Trade Names & Written
Contracts to be provided at closing").)[5]

Blue Ridge Farms, Inc., and Jeffrey Siegel claimed in that
bankruptcy proceeding that the filing was fraudulent because the
properties being sold did not belong to Chloe Foods, that the
Kontogiannis family had engaged in extensive fraud and looting of
the family business, and that a state court proceeding had original
jurisdiction over the dispute that Chloe Foods was now attempting
to evade by making the bankruptcy filing.  (See dkt. entry no. 44-
5, Thompson Decl., Ex. D, Objections of Jeffrey Siegel and Blue
Ridge Farms, Inc.)  The objections mirror many of the Defendants'
arguments before this Court, including that the Objectors are the

_____

[5] Although the Defendants hinge their arguments on the failure
to specifically mention the registered trade name or logo in the
Asset Purchase Agreement, or any schedule thereto, the undisputed
facts demonstrate that the Bankruptcy Court heard argument about
and considered a sale of all intellectual property, including the
registered trade name and registered logo at issue here, to EM-ESS
from Chloe Foods.  See infra.

true owners of the registered trade name and registered logo, and
that the "frauds" perpetrated by the Kontogiannis family nullify
any subsequent sales of assets procured through such fraud:

> 57.  With respect to Blue Ridge, the "assets" which debtor proposes to sell include
> and consist of: its accounts receivables; cash; assets; machinery; equipment; trademarks;
> trade names; logo; trucks; office furniture and computer equipment; intellectual property;
> and, contract rights and leasehold interests of which it was wrongfully divested. The debtor
> has no valid title to any such assets, and cannot prove any title thereto.
>
> 58.  It is well-settled that a "bankruptcy court may not allow the sale of property as
> 'property of the estate' without first determining whether the debtor in fact owned the
> property". _Warnick v. Yassian (In re Rodeo Canon Development Corp.)_, 362 F.32d 603, 608-
> 609 (9th Cir. 2004); _also_, _In re Kurt Claywell_, 341 B.R. 396 (Bankr. Conn. 2006). Moreover,
> as most recently held, a Section 363(f) sale cannot be had when there exists an unresolved
> issue of whether the subject property is "property of the estate". _In re Interiors of Yesterday,
> LLC_, 2007 Bankr. LEXIS 449 (Bankr. D. Conn. 2007); _In re Whitehall Jewelers Holdings,
> Inc._, 2008 Bankr. LEXIS 2120 (Bankr. D. Del. July 28, 2008). As demonstrated herein-

(Id. at 25.)  June Siegel and the estate of Seymour Siegel also
filed an objection, making the same arguments as described above.
(See Pl. Statement at ¶ 7; see also dkt. entry no. 44-4, Thompson
Decl., Ex. E, Objections of June Siegel & Estate of Seymour
Siegel.)

   The Bankruptcy Court held two hearings on the proposed sale,
and at the second of those hearings, the Objectors, represented by

counsel, objected vociferously to the proposed sale, but were
ultimately overruled.  (See dkt. entry no. 44-6, Thompson Decl.,
Ex. F, 5-21-09 Hr'ing on Mot. to Sell Property Free & Clear of
Liens Transcript at 2, 63-76 ("5-21-09 Hr'ing"); see also dkt.
entry no. 44-2, Pl. Br. in Supp. of Mot. for Summ. J. at 7-10, 14-
18 ("Pl. Br.").)

      The Objectors argued to the Bankruptcy Court that the assets
did not belong to Chloe Foods, or at the very least, there was a
question regarding who properly owned the assets such that the sale
of those assets could not be approved by the court; the Bankruptcy
Court ultimately disagreed with that position:

> We just believe that there's a fundamental question that should
> be answered before any sale proceeds and that's whether the
> debtor even has a right to sell the property that it seeks to
> sell here today.  It's our position that it's not and that the
> property belongs to Blue Ridge, that it was acquired by the
> debtor pursuant to a fraudulent foreclosure proceeding that was
> orchestrated by Chloe Foods' principals and other companies
> acting with it.  The rights to the ownership of these assets are
> being litigated in a state court action pending off the street
> and we just believe that a determination on ownership should be
> made before any sale can proceed forward.
>
>        THE COURT:  All right.  Chloe Foods is a corporation.
> It owns these assets, has title to these assets at the present
> time.  Your clients' actions a fraudulent conveyance action.

(5-21-09 Hr'ing at 63.)

The Objectors disputed the Bankruptcy Court's understanding that Chloe Foods had the right to transfer that title through an approved sale, explaining the history of the transactions between Kontogiannis and the Siegel family and how they were seeking a judgment against Kontogiannis regarding his fraudulent conveyances. (See id. at 63-64, 70-75.)  When the Objectors argued that there were ongoing, concurrent state and arbitration actions that could determine that Kontogiannis had defrauded the Siegel family and stolen the property at issue, the Bankruptcy Court asked:

> THE COURT:  By your -- but the point is how are you -- is Chloe Foods a defendant in that?
>
> MR. MAIZES:  No, Your Honor.
>
> THE COURT:  Well, then how do you think you would ever get a judgment that would be enforceable against Chloe Foods?
>
> MR. MAIZES:  Chloe Foods doesn't own the asset it's trying to sell today.
>
> THE COURT:  But you -- this arbitration, you're saying is going to determine that?
>
> MR. MAIZES:  Partially, Your Honor.

THE COURT:  How would they be able to determine that
without Chloe Foods being a party to it?

MR. MAIZES:  Because Chloe Foods is not a party.  They
refuse to participate in the arbitration.

THE COURT:  But this is -- the automatic stay --

MR. MAIZES:  I understand.

THE COURT:  -- prevents anythi -- any action.  If you
are -- if you were proceeding with an arbitration that result of
which would be some kind of determination of a -- an arbitration
panel that the debtor's property is not property of the estate,
you're violating the automatic stay by going ahead with that.

MR. MAIZES:  I agree, Your Honor.  That issue --

THE COURT:  This Court has jurisdiction to determine
what's property of the estate.

MR. MAIZES:  I agree with Your Honor.  That issue
would have to be determined either by this Court or in the
stayed state court action.

(Id. at 68-69.)

    The Bankruptcy Court engaged in an extended colloquy with the
Objectors before finding that their claim would not prevent the
court from determining the issue of ownership or approving the sale
of the assets.  (See id. at 67-68.)

10

THE COURT:  That may be but that may -- gives you a
claim against Thomas Kontogiannis.  I don't see how that gets --
gives you a claim against the assets of this estate that would
be sufficient to preclude the sale from going forward.  Section
363 of the Bankruptcy Code gives the Court authority to pro --
to approve a transfer of assets free and clear of liens, claims
and encumbrances provided that the interest in question is in
bona fide dispute.  We are -- it seems to me that I have no
proof that there is an interest here and it's clear that there's
a dispute over your -- whether your clients -- whether your
clients claim that they -- that the assets of the debtor don't
actually belong to the debtor.  I see absolutely no basis for me
to conclude that this is an interest that is not in *bona fide*
dispute and that prevents this sale from going forward.  I would
note that if the sale doesn't go forward there will be nothing
here for your clients either.  So what is the point here?

MS. PASHKOFF:  Our client really wants the name back.
It wants to continue using the Blue Ridge name and it can't do
that at this point.

(Id. at 75.)  Despite the Objectors' request that the court "carve
out" "the Blue Ridge name" from the rest of the purchased assets,
the Bankruptcy Court determined that the sale would go forward as
intended, and that any right to recovery resulting from another
action's adjudication concerning fraud would attach to the proceeds
from the sale.  (Id. at 76.)  The Bankruptcy Court explained its
reasoning, noting that the Objectors had not established a claim
against the assets of the estate sufficient to preclude the sale
from going forward.  (See id. at 75 (relying on "Section 363 of the

11

Bankruptcy Code" which gave "the Court authority . . . to approve a transfer of assets free and clear of liens, claims and encumbrances provided that the interest in question is in bona fide dispute").) Because the Objectors had not demonstrated a superior claim to the assets, the Bankruptcy Court declined to withhold approval over the sale.  (See id.)

> THE COURT:  I'm not permitting -- going to permit you to destroy any value in this estate by holding up -- holding this up so that you can assert a claim, obtain adjudication of a claim that hasn't yet been asserted against the debtor and certainly not in this forum and for which I've seen no proof and which is -- it seems to me be questionable at best as to whether it would result in anything other than an unsecured claim against the estate.  So respectfully, I'm overruling your objections to this sale without prejudice to your right to pursue any claims you may have against the Kontogiannises without prejudice to your right to assert claims against the sales proceeds.

(Id. at 76.)

The Bankruptcy Court confirmed the sale by Chloe Foods to EM-ESS, pursuant to the terms of the Asset Purchase Agreement, by way of an order dated May 22, 2009.  (See Defs. Statement at ¶ 17.) The Objectors did not move for a stay of the order approving the sale of the assets, nor file a motion for reconsideration, nor file an appeal.  (See Pl. Statement at ¶ 16.)  The Objectors instead

12

filed an Adversary Complaint, claiming a right to the sale proceeds.  (See id.)

     Although the Bankruptcy Court approved the sale of the assets in May 2009, the assignment of the trademark property from Chloe Foods was not signed and delivered until August 2010, even though the assignment was dated as of the date that the original Asset Purchase Agreement was signed.  (See id. at ¶ 18; see also dkt. entry no. 56-8, Thompson Supp. Decl., Ex. H, Tab 14, Order of the Bankruptcy Court Confirming Sale by Debtor Chloe Foods Corp., of Substantially All of the Assets of the Debtor Free & Clear of All Liens, Claims & Encumbrances, to EM-ESS Acquisition LLC (authorizing Annette Apergis to "execute, acknowledge and deliver all such other documents, bills of sale, assignments, conveyances and other instruments of transfer . . . as may be reasonably necessary to perform and close under the APA").)  On August 9, 2010, on behalf of Chloe Foods, Annette Apergis executed an "Assignment of Trademarks", dated as being delivered on May 23, 2009, to assign the trademarks to EM-ESS.  (See Defs. Statement at ¶ 28.)  The assignment transferred the registered trade name and registered logo to EM-ESS, as approved by the Bankruptcy Court. (See Thompson Supp. Decl., Ex. H, Tab 11, Schedule A, Trademark & Trade Name Assignment.)  This assignment was filed with the USPTO on August 18, 2010.  (See Defs. Statement at ¶ 29.)

**ii.   The Current Action**

The registered trade name and registered logo, after the
Bankruptcy Court approved the sale, were assigned from Chloe Foods
to EM-ESS, and EM-ESS subsequently changed its name to Blue Ridge
Farms, LLC ("BRF").  (See Pl. Statement at ¶¶ 17-20.)  BRF filed
the assignment with the USPTO, and then sold and assigned the
trademarks to Fresh Prepared Foods in August 2010 for $215,000.
(See id. at ¶ 20; Defs. Statement at ¶¶ 29, 30.)  Fresh Prepared
Foods filed the assignment with the USPTO on August 25, 2010.  (See
Defs. Statement at ¶ 32.)

Fresh Prepared Foods manufactures, processes, and markets
fresh and refrigerated prepared foods for consumer consumption,
including heat-and-serve and ready-to-eat entrees, salads, and
kosher dishes.  (See Pl. Statement at ¶ 1.)  The Defendants also
manufacture salads, entrees, side dishes, and kosher items.  (See
id. at ¶ 2.)

Fresh Prepared Foods alleges that in November 2010, it
discovered that the Defendants "were using commercially on their
website, www.farmridgefoods.com, a chicken logo that is very
similar to [the registered logo]".  (Id. at ¶ 23.)  The registered
logo consists of a "stylized blue rooster with red letters":

14



(Dkt. entry no. 47-2, Aff. of Jeffrey Siegel ("Siegel Aff."),

Ex. 1.)  The Defendants utilize the following logo on their

products:



(Dkt. entry no. 47-17, Siegel Aff., Ex. 16 (the "weathervane

logo").)  The Defendants allege that Fresh Prepared Foods has not

utilized the registered trademark, but instead has resorted to

other versions:

15



(Dkt. entry no. 47-14, Siegel Aff., Ex. 13, Cole Slaw Packaging;

dkt. entry no. 47-1, Siegel Aff. at ¶ 39.)

   The registered trade name consists of the words "Blue Ridge

Farms":

# Blue Ridge Farms

| | |
|---|---|
| Word Mark | BLUE RIDGE FARMS |
| Goods and Services | IC 029. US 046. G & S: Salads, namely, vegetable salads, potato salads, cole slaw, seafood salads, tuna and chicken salads; grilled vegetables; cream cheese. FIRST USE: 19851200. FIRST USE IN COMMERCE: 19851200 |
| | IC 030. US 046. G & S: Macaroni salad; Pasta Salad; Flavored, sweetened gelatin desserts; Dessert Mousse; Dessert puddings. FIRST USE: 19851200. FIRST USE IN COMMERCE: 19851200 |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 78652327 |
| Filing Date | June 16, 2005 |
| Current Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | September 26, 2006 |
| Registration Number | 3182917 |
| Registration Date | December 12, 2006 |
| Owner | (REGISTRANT) Chloe Foods Corp. CORPORATION DELAWARE 3301 Atlantic Ave. Brooklyn NEW YORK 11208 |
| | (LAST LISTED OWNER) PJJ CONSULTING, LLC LIMITED LIABILITY COMPANY NEW JERSEY 7 HOLLY BROOK TOMS RIVER NEW JERSEY 08754 |
| Assignment Recorded | ASSIGNMENT RECORDED |
| Attorney of Record | Donna L. Thompson |
| Prior Registrations | 3019578 |
| Type of Mark | TRADEMARK |
| Register | PRINCIPAL |
| Affidavit Text | SECT 15. SECT 8 (6-YR). |
| Live/Dead Indicator | LIVE |

(USPTO Registration No. 3,182,917.)   In the "Our Team" section on the "About Us" page of the Defendants' website, they identify themselves as being associated with "Blue Ridge Farms":

- "Jeffrey Siegel, graduate of Cornell University, is the owner and CEO of Blue Ridge Farms, a Brooklyn, NY manufacturer of salads, entrees, side dishes and kosher items since 1938."

- "Ron Loeb was Vice President of Sales for Blue Ridge Farms for many years, and achieved great success as a driving force for its sales team throughout the 1990's into the 2000's."

(Dkt. entry no. 44-7, Aff. of Peter Jungsberger at ¶ 7; see dkt. entry no. 44-10, Jungsberger Aff., Ex. H.)

## II.   Summary Judgment Standard

The standard for a motion for summary judgment is well-settled and will be briefly summarized here.   Federal Rule of Civil Procedure 56 provides that summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56(a).   In making this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor."   United States ex rel. Kosenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing

17

<u>Abramson v. William Paterson College</u>, 260 F.3d 265, 276 (3d Cir. 2001)).

### III. Analysis

The parties seek summary judgment on the issue of infringement.  A plaintiff must show three elements to set forth a claim of trademark infringement: "(1) the mark is valid and legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark is likely to create confusion concerning the origin of goods and services." <u>E.T. Brown Drug Co. v. Cococare Prods.</u>, 538 F.3d 185, 191 (3d Cir. 2008); <u>see</u> 15 U.S.C. § 1114.  Here, the parties dispute whether Fresh Prepared Foods can satisfy its burden of demonstrating ownership of the disputed mark.  Accordingly, the Court will resolve the matter of ownership of the registered trade name and registered logo before determining whether summary judgment on the issue of infringement or non-infringement is appropriate.

### i.    Ownership of the Trademarks

The parties dispute whether the Bankruptcy Court conclusively determined ownership of the trademark property, such that preclusive effect would prevent the Defendants from arguing here that Fresh Prepared Foods does not own the registered trade name or registered logo.  Fresh Prepared Foods contends that the principles of res judicata and collateral estoppel require entry of judgment

18

in its favor on its infringement claims because (1) the Bankruptcy
Court found that the registered trade name and registered logo
belonged to the estate of Chloe Foods as assets to sell, and (2)
the Defendants participated in the bankruptcy proceedings by
objecting to the Asset Sale Motion and specifically asking the
Bankruptcy Court to make a determination as to the ownership issue
before allowing a sale.  (See Pl. Br. at 2-3, 14-18.)  The
Defendants oppose the motion by Fresh Prepared Foods on the grounds
that Fresh Prepared Foods does not have proof of ownership of the
registered trade name or registered logo.  (See dkt. entry no. 51,
Defs. Br. in Opp'n to Pl. Mot & in Supp. of Defs. Mot. for Summ. J.
at 2, 12-13 ("Defs. Opp'n Br.").)  Fresh Prepared Foods argues that
(1) it is registered as the owner with the USPTO, and (2) an
inadvertent failure to have the debtor execute the document at
closing does not vitiate the effect of the Bankruptcy Court's
decision to overrule the Defendants' objections and approval of the
sale of those assets.  (See dkt. entry no. 52, Pl. Br. in Opp'n to
Defs. Mot. for Summ. J. at 3 ("Pl. Opp'n Br.").)

The Court will "follow the federal rule that the law of the
issuing court -- here, federal law -- determines the preclusive
effects of a prior judgment."  Paramount Aviation Corp. v. Agusta,
178 F.3d 132, 145 (3d Cir. 1999); see Burlington N. R.R. v. Hyundai
Merch. Marine Co., 63 F.3d 1227, 1231 (3d Cir. 1995) ("[W]e apply

federal common law principles of issue preclusion since we are examining the issue preclusive effect of a prior federal court action").

Issue preclusion, or collateral estoppel, prevents parties from re-litigating an issue that has already been actually litigated.  "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'"  Burlington N. R.R., 63 F.3d at 1231-32 (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). Issue preclusion estops a litigant from advancing a position that he or she has presented and lost in a prior proceeding against the same or a different adversary.  See Blonder-Tongue Lab. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329.  For defensive or offensive collateral estoppel -- forms of non-mutual issue preclusion -- to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action.  See Parklane Hosiery, 439 U.S. at 328, 332; Blonder-Tongue Labs, 402 U.S. at 331, 333.

The bankruptcy proceeding was conducted in the Eastern District of New York in 2008 to 2009.  (See Thompson Decl., Ex. A, In re Chloe Foods Corp.)  The Bankruptcy Court heard oral argument on the request for approval of the proposed sale of assets where the Objectors were represented; the Objectors filed, briefed and argued their opposition to the motion.  (See supra at I.i.)  The Bankruptcy Court approved the sale of Chloe Foods' assets to EM-ESS, overruling the objections that were filed, briefed, and argued.  (See id.)  The proposed sale of assets included Chloe Foods' "trademarks, trade names, and service names and all rights associated therewith and appurtenant thereto".  (Asset Purchase Agreement at 7.)  As the Objectors and the Bankruptcy Court contemplated during oral argument on the motion, the sale would include the rights to the registered trade name, as evidenced by specific objections referring to the Objectors' dissatisfaction at being unable to use the name "Blue Ridge Farms":

> MS. PASHKOFF:  Our client really wants the name back.
> It wants to continue using the Blue Ridge name and it can't do
> that at this point.

(5-21-09 Hr'ing at 75.)  After considering the arguments raised by the Objectors and proponents of the sale, the Bankruptcy Court (1) confirmed its jurisdiction over the debtor and its power to determine and dispose of the assets of the estate; (2) found that the registered trade name and registered logo were assets of Chloe

Foods; and (3) approved the final sale of the assets from Chloe
Foods to EM-ESS.  (See id. at 63, 75-76.)

     The Court finds that the necessary prerequisites for
application of issue preclusion have been met here: (1) the issue
of ownership of the registered trade name and registered logo is
the same as that involved in the bankruptcy proceeding; (2) that
issue was actually and necessarily litigated before the Bankruptcy
Court; (3) the Bankruptcy Court determined the issue of ownership
by a final and valid judgment; and (4) that determination was
essential to the approval of the proposed sale of the assets.  See
Burlington N. R.R., 63 F.3d at 1231-32.  Here, issue preclusion is
being asserted against two of the four defendants: Jeffrey Siegel
and Blue Ridge Farms, Inc., both of which were involved in the
bankruptcy proceedings.  (See Pl. Br. at 18.)  Accordingly, the
Court finds that -- given the "full and fair" opportunity to
litigate the same issue in the bankruptcy proceeding enjoyed by
Jeffrey Siegel and Blue Ridge Farms, Inc. -- they may properly be
estopped from advancing the argument that the Bankruptcy Court was
without power to approve and effectuate the sale of the registered
trade name and registered logo from Chloe Foods to EM-ESS.  See
Parklane Hosiery, 439 U.S. at 328, 332.

     The Court further finds that, as to defendants Ronald Loeb and
Luis Gonzalez, though these defendants did not participate in the

22

bankruptcy proceedings, they have raised here the same arguments as were asserted there, represented even by the same law firm. (See supra at I.i; see also Defs. Opp'n Br. at 12-13; 5-21-09 Hr'ing at 3.)  The Bankruptcy Court provided reasoning as to its jurisdiction and its adjudication of the ownership of the assets, and the Court herein adopts it.

Chloe Foods, as the debtor, was requesting approval for the sale of its assets, and the Bankruptcy Court, empowered by the bankruptcy code, was a court of competent jurisdiction to determine the metes and bounds of the debtor's estate, and then to dispose of its assets.  (See 5-21-09 Hr'ing at 68-69, 75.)  See 11 U.S.C. §§ 363(f)(4) ("The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if . . . such interest is in bona fide dispute"), 363(p)(2) ("In any hearing under this section . . . the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.").  Determining that Chloe Foods was the owner of the registered trade name and registered logo, and that the Objectors had no evidence or judgment to resolve the bona fide dispute regarding the issue of ownership, the Bankruptcy Court found that the registered trade name and registered logo were assets of the estate and subject to a sale approved under Section

363.   (See id. at 63, 75.)   Loeb and Gonzalez have failed to
present either argument or evidence that a prior judgment or claim
to the registered trade name and registered logo that would have
prevented the Bankruptcy Court from approving the sale on that
date, or that there is a genuine dispute of fact regarding some
defect in title that could nullify the valid registration held by
Fresh Prepared Foods from the USPTO.   (See Defs. Opp'n Br. at 2-11,
12-13.)

The Defendants, in effect, still dispute that the Bankruptcy
Court had the power to sell the registered trade name and
registered logo because they claim Chloe Foods did not own them.
(See id.)   The Court rejects these arguments, for it does not sit
as an appellate court, re-examining the decision from a bankruptcy
proceeding that took place in the Eastern District of New York in
2009.   The Bankruptcy Court decided the issue adversely to Jeffrey
Siegel and Blue Ridge Farms, Inc.   Loeb and Gonzalez have failed to
establish a genuine dispute of material fact with respect to the
ownership of the registered trade name and registered logo.
Therefore, the Court will grant summary judgment in favor of Fresh
Prepared Foods and against the Defendants regarding the issue of
ownership of the registered trade name and registered logo.

##     ii.   Liability for Infringement

Fresh Prepared Foods and the Defendants also move for summary judgment on the issue of liability for infringement as alleged in Counts 1-6 of the Amended Complaint.  (See Pl. Br. at 19-22; Defs. Opp'n Br. at 12-15.)  Fresh Prepared Foods argues that the claims under New Jersey state law mirror those under the Lanham Act, such that a "violation of [the equivalent section] of the Lanham Act leads to a finding of liability under N.J.S.A. § 56:4-1."  (Pl. Br. at 21 (citing FM 103.1, Inc. v. Universal Broad. of N.Y., Inc., 929 F.Supp. 187, 198 (D.N.J. 1996)).)  As the Defendants do not argue that there are differences between the analyses appropriate under the separate counts, the Court will treat the analyses simultaneously.  See FM 103.1, 929 F.Supp. at 198.  The Defendants argue that no facts show infringement by the Defendants of the registered trade name and registered logo.  (See Defs. Opp'n Br. at 14-15.)  Fresh Prepared Foods responds in its reply papers that:

> [a]s the court is aware, Plaintiff's summary judgment motion asks the court to declare Plaintiff the rightful owner of the trademarks and set the issue of infringement down for trial.  The parties have not conducted discovery or retained experts on these hotly contested, fact sensitive issues.  Hiring experts and conducting discovery to establish infringement and damages is the second step, after the court has ruled on the issue of ownership . . . .

(Pl. Opp'n Br. at 4.)[6]

---

[6] The Court notes that, per the Pretrial Scheduling Order, the parties concluded fact discovery on May 25, 2011, and the parties

25

To prove trademark infringement, a plaintiff must show that: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services.  See E.T. Brown Drug Co., 538 F.3d at 191; 15 U.S.C. § 1114.  The first element, concerning validity and legal protectability, is proven where a mark has been federally registered and has become "incontestable" under the Lanham Act.  15 U.S.C. §§ 1058, 1065.  "A trademark becomes incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration."  Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 (3d Cir. 1994).

> If the mark at issue was federally registered and had become "incontestable", pursuant to 15 U.S.C. §§ 1058 and 1065, validity, legal protectability, and ownership are proved.  Where a mark has not been federally registered or has not achieved incontestability, validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive.  Secondary meaning is demonstrated where, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product itself.  Although there are numerous cases determining secondary meaning, there is no consensus on

---

have not moved to re-open discovery.  (See dkt. entry no. 12, Pretrial Sched. Order.)

> its elements.  A non-exclusive list of factors which may
> be considered includes the extent of sales and
> advertising leading to buyer association, length of use,
> exclusivity of use, the fact of copying, customer
> surveys, customer testimony, the use of the mark in
> trade journals, the size of the company, the number of
> sales, the number of customers, and actual confusion.

Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 291-92

(3d Cir. 1991) (internal citation and quotation omitted).

Trademark infringement requires that "consumers viewing the

mark would probably assume the product or service it represents is

associated with the source of a different product or service

identified by a similar mark." Checkpoint Sys. Inc. v. Check Point

Software Techs., Inc., 269 F.3d 270, 279-80 (3d Cir. 2001).  There

are ten "Lapp factors" that are used to determine whether a product

is likely to cause confusion:

> (1) The degree of similarity between the owner's mark
> and the alleged infringing mark;
> (2) the strength of the owner's mark;
> (3) the price of the goods and other factors
> indicative of the care and attention expected of
> consumers when making a purchase;
> (4) the length of time the defendant has used the mark
> without evidence of actual confusion;
> (5) the intent of the defendant in adopting the mark;
> (6) the evidence of actual confusion;
> (7) whether the goods, though not competing, are
> marketed through the same channels of trade and
> advertised through the same media;
> (8) the extent to which the targets of the parties'
> sales efforts are the same;
> (9) the relationship of the goods in the minds of
> consumers because of the similarity of the functions;
> and
> (10) other facts suggesting that the consuming public
> might expect the prior owner to manufacture a product in

the defendant's market or that he is likely to expand
into that market.

Fisons Horticulture, 30 F.3d at 473.

Questions regarding the likelihood of confusion are normally
factual in nature.  Am. Int'l Grp., Inc. v. London Am. Int'l Corp.,
664 F.2d 348, 351 (2d Cir. 1981).  Nonetheless, "courts retain an
important authority to monitor the outer limits of substantial
similarity within which a [fact-finder] is permitted to make the
factual determination whether there is a likelihood of confusion as
to source," and summary judgment is appropriate if the Court is
satisfied that the products or marks are so dissimilar that no
question of fact is presented.  Warner Bros. Inc. v. Am. Broad.
Cos., 720 F.2d 231, 246 (2d Cir. 1983); see Durham Indus., Inc. v.
Tomy Corp., 630 F.2d 905, 918 (2d Cir. 1980) (summary judgment
granted to counterclaim defendant on issue of likelihood of
consumer confusion); B&L Sales Assocs. v. H. Daroff & Sons, Inc.,
421 F.2d 352, 354 (2d Cir. 1970) (summary judgment to defendant);
Bowmar Instrument Corp. v. Cont'l Microsystems, Inc., 497 F.Supp.
947, 954-55 (S.D.N.Y. 1980); see also Checkpoint Sys., Inc., 269
F.3d at 280-99.

Fresh Prepared Foods argues that, while the Defendants dispute
that the registered logo is misleadingly similar to the weathervane
logo, the Defendants do not deny that they have used and continue
to use the registered trade name on their website.  (See Pl. Br. at

28

19-21.)  Fresh Prepared Foods further argues that it seeks only
partial summary judgment in the form of a determination that the
Defendants have used and continue to use the registered trade name,
not summary judgment with respect to damages at this juncture.
(See Pl. Opp'n Br. at 4.)  Fresh Prepared Foods contends that the
issue of whether the registered logo and the weathervane logo are
misleadingly similar is not dispositive, and that the infringement
analysis is satisfied merely with the Defendants' reference to
"Blue Ridge Farms" -- the registered trade name held by Fresh
Prepared Foods -- on the Farm Ridge Foods website.  (See Pl. Br. at
22; Pl. Opp'n Br. at 2-4.)

     The Defendants argue that Fresh Prepared Foods failed to
establish that they infringed the registered logo, or engaged in
unfair competition, under the applicable legal standards.  (See
Defs. Opp'n Br. at 14-16.)  The Defendants argue that Fresh
Prepared Foods has no proof of infringement, as evidenced by its
inability to provide a single example of the Defendants' infringing
use of the registered trade name or registered logo in response to
interrogatories.  (See id. at 15.)  The Defendants further argue
that a "simple comparison of plaintiff's logo with that of the
defendants immediately establishes that they bear absolutely no
resemblance to each other", and that, on its face, the weathervane
logo would not mislead or confuse the public, noting specifically

29

that the logos are different colors, have different styles, and
contain different word marks.  (Id. at 15-16.)

    We find that Fresh Prepared Foods has not met its burden of
demonstrating that no material fact is in dispute regarding the
issues on which it seeks summary judgment.  Fresh Prepared Foods
has established that (1) the registered trade name and registered
logo are its property and they have been legally registered, and
(2) the Defendants have referenced the registered trade name on
their website.  Nonetheless, there are facts in dispute concerning
the protectability of the trademarks.  Fresh Prepared Foods has not
established that the registered trade name and registered logo have
achieved incontestability through the appropriate affidavits or
secondary effects.  See Fisons Horticulture, Inc., 30 F.3d at 472.
The Defendants have also established a dispute regarding the
protectability of the registered logo by alleging that it is not
actually in use and demonstrating that Fresh Prepared Foods is
using a different version of the registered logo.  See Ford Motor,
930 F.2d at 292.  (See Cole Slaw Packaging; Siegel Aff. at ¶ 39.)
Moreover, there are factual disputes concerning several of the Lapp
factors that preclude summary judgment in favor of Fresh Prepared
Foods regarding the Defendants' liability for infringement of
either the registered trade name or the registered logo.  In
addition to the similarity of the weathervane logo with the

30

registered logo, there are other factual disputes about elements
underpinning a determination of likelihood of confusion,
specifically concerning (1) the strength of the registered name and
registered logo, (2) how long the Defendants have had the
registered trade name on their website and used the weathervane
logo with or without evidence of actual confusion, (3) the markets
at which the parties' products are directed, and (4) the
Defendants' intent in adopting the weathervane logo and referencing
the registered trade name.  (See Pl. Statement at ¶¶ 1, 2, 23;
Defs. Statement at ¶¶ 38, 43-46; Siegel Aff. at ¶¶ 9, 10; dkt.
entry no. 26-4, Exhibit Sampling of Chicken Logos.)

     The Defendants have similarly not met their burden of
establishing that there are no material facts in dispute with
respect to the issue of non-infringement on which they seek summary
judgment in their favor.  The Court rejects the Defendants'
argument that the registered logo and the weathervane logo are
facially too dissimilar to cause confusion.  Both logos display
blue chickens and arguably target similar markets.  (See Siegel
Aff., Ex. 1, Ex. 16; Pl. Statement at ¶¶ 1, 2.)  The appropriate
analysis must consider the logos separately to determine, in the
totality of the circumstances, whether a consumer would likely be
confused:

     the test for determining the similarity of the marks is
     "whether the labels create the 'same overall impression'

31

> when viewed separately." <u>Banff, Ltd. v. Federated Dep't
> Stores, Inc.</u>, 841 F.2d 486, 492 (2d Cir. 1988)
> (citations omitted).  <u>See Am. Auto. Ass'n. v. AAA Ins.
> Agency, Inc.</u>, 618 F.Supp. 787, 792 (W.D.Tex. 1985) (In
> determining whether two marks are confusingly similar,
> appropriate test is not side-by-side comparison of
> marks, the emphasizing differences in detail, but
> whether average consumer, on encountering one mark in
> isolated circumstances of marketplace and having only
> general recollection of the other, would likely confuse
> or associate the two.) . . . .  Perhaps the most
> important of these factors is the first on the <u>Scott
> Paper</u> list: the degree of similarity between the two
> marks.  We recently held that "if the overall impression
> created by marks is essentially the same, 'it is very
> probable that the marks are confusingly similar.'"

<u>Fisons Horticulture, Inc.</u>, 30 F.3d at 477-78 (internal citation

omitted).  The Defendants argue that Fresh Prepared Foods still

cannot prove infringement because it has identified no "single

example of any alleged infringement by defendants."  (<u>See</u> dkt.

entry no. 53, Reply Decl. of Ahmed A. Massoud at ¶¶ 19-20.)

Assuming <u>arguendo</u> that the registered trade name and registered

logo are protectable, in the event the Court determines that the

Defendants' weathervane logo is confusingly similar to the

registered logo, then every instance where the Defendants use the

mark constitutes infringement.  <u>See</u> 15 U.S.C. § 1114.  Similarly,

if the Court determines that the references to "Blue Ridge Farms"

on the Defendants' website likely would confuse the public, then

those references constitute infringement.  <u>See</u> <u>id.</u>

The Court will accordingly deny both motions for summary judgment with respect to the issue of infringement.[7]

**IV.   Conclusion**

For the reasons stated supra, the Court will grant the Plaintiff's motion for summary judgment in part and deny it in part.  The Court will deny the Defendants' cross motion for summary judgment.  The Court will issue an appropriate order and judgment.

s/ Mary L. Cooper

**MARY L. COOPER**
United States District Judge

Dated: September 9, 2013

---

[7] As to the other forms of relief sought by the parties here, the Court finds these requests are premature and largely undeveloped in the papers.  (Compare Pl. Mot. (requesting award of attorneys' fees and costs, as well as injunctive relief), with Pl. Br. at 23-24 (citing to 15 U.S.C. § 1117, which permits cost recovery after establishment of a violation of trademark rights, then arguing that the Defendants should be sanctioned for the "almost . . . a fraud" that they perpetuated before the Court).  Compare Defs. Mot. (requesting attorneys' fees and costs), with Defs. Opp'n Br. (failing to argue entitlement to attorneys' fees or costs).)  The Court therefore will also deny the motion as to these requests for relief.  See Fisons Horticulture, Inc., 30 F.3d at 473 ("Once a trademark owner demonstrates the likelihood of confusion, it is entitled to injunctive relief.") (internal citation omitted); 15 U.S.C. § 1117 ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32 and subject to the principles of equity, to recover . . . the costs of the action.").

33